UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT RUIZ PEREZ, <br><br> Defendant. | Case No. CR19-106RSL <br><br> ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on defendant's "Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582([c])(1)." Dkt. # 133. Having considered the motion and the record contained herein, the Court finds as follows:

## I.  PROCEDURAL MOTIONS

As an initial matter, the Court finds compelling reasons justify sealing defendant's medical records (Dkts. # 137, # 138, # 139, # 151). The defendant's motions to seal (Dkts. # 136, # 150) are accordingly GRANTED. The government's motion to file an overlength response (Dkt. # 143) is also GRANTED.

## II.  BACKGROUND

Defendant is a 49-year-old inmate currently incarcerated at the Lompoc Federal Correctional Institution ("FCI Lompoc"). Dkts. # 133 at 2, # 144 at 3. On August 8, 2019, defendant pled guilty to possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Dkt. # 39 at 1. On November 8, 2019, the Court sentenced defendant to 60 months' imprisonment and three years of supervised release. Dkt. # 79 at 2–3.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 1

Defendant is currently scheduled for release from the custody of the Federal Bureau of Prisons ("BOP") on August 25, 2023. Dkts. # 133 at 10, # 144 at 3. He now moves for compassionate release.

### III. LEGAL FRAMEWORK

The compassionate release statute provides narrow grounds for defendants in "extraordinary and compelling" circumstances to be released from prison early. See 18 U.S.C. § 3582(c). The First Step Act of 2018 amended the procedural requirements governing compassionate release. See id. Prior to the First Step Act's passage, only the Director of the BOP could bring motions for compassionate release. The Director rarely filed such motions. See, e.g., United States v. Brown, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). Congress amended the statute to allow defendants to directly petition district courts for compassionate release. As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part,

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> (ii) . . .
>
> and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 2

Prior to passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. See 28 U.S.C. § 994(t). Section 994(t) provides,

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. § 3582(c)(1)(A)], shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.
>
> **Commentary**
>
> **Application Notes:**
>
> 1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>    (A) **Medical Condition of the Defendant**—
>
>    (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 3

    (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

  (ii)  The defendant is—

    (I)  suffering from a serious physical or medical condition,

    (II)  suffering from a serious functional or cognitive impairment, or

    (III)  experiencing deteriorating physical or mental health because of the aging process,

  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

  (i)  The death or incapacitation of the caregiver of the defendant's minor child or minor children.

  (ii)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

2. **Foreseeability of Extraordinary and Compelling Reasons.**—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 4

imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

3. **Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.

4. **Motion by the Director of the Bureau of Prisons.**—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law[.]

U.S.S.G. § 1B1.13.[1]

### IV.   DEFENDANT'S CIRCUMSTANCES

#### a. Exhaustion Requirement

Prior to considering the merits of defendant's motion, the Court must determine whether he has met the statutory exhaustion requirement for compassionate release. See 18 U.S.C. § 3582(c)(1)(A). The parties agree that defendant satisfied this requirement. Dkts. # 133 at 5–6,

---

[1] For the reasons set forth in detail in United States v. Van Cleave, Nos. CR03-247-RSL, CR04-125-RSL, 2020 WL 2800769, at *3-5 (W.D. Wash. May 29, 2020), "the Court finds the guidance of U.S.S.G. § 1B1.13 persuasive, but not binding." Id. The Court will exercise its discretion to consider "extraordinary and compelling" circumstances that may exist beyond those explicitly identified by the Sentencing Commission in its outdated policy statement. Id.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 5

# 144 at 9. On June 3, 2020, defendant submitted a request for compassionate release, which the Warden at FCI Lompoc denied in a letter dated June 26, 2020, though it appears defendant may not have received the denial letter until July 8, 2020. Dkts. # 133 at 3, # 133-2 at 2–3. The Warden received another request from defendant for compassionate release on August 21, 2020,[2] but the Warden's responding letter was dated October 14, 2020, and it appears defendant may not have received this letter until October 28, 2020. Dkt. # 133-4 at 2. Given the lapse of time after defendant's August request, the Court finds defendant has exhausted his administrative remedies, and the Court will consider the merits of his motion for compassionate release.

### b. "Extraordinary and Compelling" Circumstances

Defendant's motion for compassionate release is based primarily on his health issues, which include testing positive for COVID-19 in May 2020 while incarcerated at FCI Lompoc. The Court need not reiterate the widely known information regarding the symptoms of COVID-19 and the devastating global impact of the virus. COVID-19 has created unprecedented challenges for federal prisons, where inmate populations are large and close contact between inmates is unavoidable. As of February 16, 2021, the BOP reports 1,606 federal inmates and 1,683 BOP staff have active, confirmed positive COVID-19 test results. See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 16, 2021). Since the BOP reported its first case in late March 2020, at least 221 federal inmates and four BOP staff members have died from the virus. Id. FCI Lompoc currently reports zero inmates and two staff with active, positive COVID-19 test results. Id. BOP has classified 647 inmates and 22 staff at FCI Lompoc as having "recovered" from the virus. Id. The government suggests that BOP's improved practices have led to the reduced numbers of COVID-19

---

[2] Although the Warden's October response refers to receiving a "Request for Administrative Remedy" appealing her earlier decision, Dkt. # 133-4 at 2, the federal regulation governing administrative remedies calls for an appeal of a Warden's decision to be submitted to the appropriate Regional Director, not to be re-submitted to the Warden. 28 C.F.R. § 542.15(a). The Court interprets defendant's August communication to the Warden as a renewed request for compassionate release. Therefore, the lapse of time following that August communication triggered exhaustion.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 6

infection at FCI Lompoc. See Dkt. # 144 at 15–17. While the Court is skeptical regarding the credit to be attributed to BOP based on the current BOP statistics, the Court acknowledges that the COVID-19 outlook is not as bleak as it once was now that vaccine distribution is underway. The Lompoc Federal Correctional Complex, which contains FCI Lompoc, reports inoculating more than 10% of inmates as of February 16, 2021 (242 of 2,046 inmates). See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 16, 2021); Population Statistics, Fed. Bureau of Prison, https://www.bop.gov/mobile/about/population_statistics.jsp (last visited Feb. 16, 2021).

A review of defendant's BOP medical records reflects that he suffers from asthma and obesity and that he is pre-diabetic.[3] See Dkts. # 137, # 138, # 151. The CDC has identified asthma (when "moderate-to-severe"),[4] being overweight, and "[t]ype 1 diabetes mellitus" as medical conditions that may increase an individual's risk, and obesity and "[t]ype 2 diabetes mellitus" as medical conditions that do increase an individual's risk. See People with Certain

---

[3] Defendant's motion repeatedly refers to him having hypertension, but as the government aptly highlights in its response, BOP records do not appear to reflect this diagnosis. Dkt. # 144 at 6; see also Dkts. # 137, # 138, # 151. Defendant's reply does not address this issue, and when referring to relevant conditions, it notably excludes any mention of hypertension. See Dkt. # 149 at 4.

[4] Asthma was not listed in the discussion of defendant's physical condition in his 2019 presentence report, see PSR ¶ 37, and some of defendant's BOP medical records indicate he had no history of asthma. Dkt. # 138 at 9, 13. Nevertheless, more recent BOP medical records reflect that defendant was prescribed an inhaler to "prevent/relieve asthma attack[s]." Dkt. # 138 at 10. Moreover, defendant's former doctor considers his asthma condition to be moderate to severe in nature, Dkt. # 149 at 9, such that the Court finds it appropriate to consider his asthma as having the potential to increase his risk of severe illness due to COVID-19.

Defendant's motion also claims that he has been a "life time [sic] tobacco smoker," Dkt. # 133 at 11, but BOP medical records indicate defendant previously denied a history of tobacco use. Dkt. # 137 at 15, 32. Defendant's declaration in support of his reply states that he smoked marijuana "on a daily basis," and that he smoked cigarettes for "many years," which he believes contributed to his asthma, Dkt. # 148 at 2, but defendant's former doctor does not mention defendant's history as a smoker. See Dkt. # 149 at 9. The CDC has determined that being a current or former cigarette smoker increases one's risk of severe illness from COVID-19. See People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 16, 2021). Given the inconsistent evidence regarding defendant's history as a smoker, the Court is not persuaded that defendant's alleged smoking habits support a finding of extraordinary and compelling circumstances here.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 7

1  Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
2  precautions/people-with-medical-conditions.html (last visited Feb. 16, 2021). The CDC does
3  not, however, list a person's *pre*-diabetic status as a condition that may increase an individual's
4  risk. See id. Additionally, only thirteen pounds separate defendant from being classified as
5  overweight rather than obese. See Dkt. # 138 at 2 (reflecting defendant's height and weight);
6  Healthy Weight, Nutrition, and Physical Activity, CDC, https://www.cdc.gov/healthyweight/
7  assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Feb. 16,
8  2021).
9       Defendant alleges that he did not receive follow-up care for his medical conditions and
10 that his risk of reinfection warrants compassionate release. Dkt. # 133 at 15–16. Contrary to
11 defendant's allegations, medical records reflect follow-up visits where medical staff treated
12 defendant for residual symptoms from his COVID-19 infection (e.g., body aches, headaches
13 breathing difficulties, coughing), conducted further exams, and prescribed him with medication
14 accordingly. Dkt. # 138 at 6–18. Altogether, given defendant's particular circumstances,
15 including the reduced rates of COVID-19 at FCI Lompoc, defendant's ability to mitigate his
16 COVID-19 risk with fairly minimal weight loss, and his receipt of medical treatment to address
17 his asthma and symptoms following his COVID-19 infection, the Court finds that defendant has
18 failed to demonstrate that "extraordinary and compelling" reasons warrant relief here. Even if
19 defendant had met his burden to demonstrate that "extraordinary and compelling" reasons
20 warrant his compassionate release, additional considerations require denial of relief.
21             **c. Additional Considerations**
22      Prior to granting defendant's motion for compassionate release, the Court must find that
23 defendant "is not a danger to the safety of any other person or to the community, as provided in
24 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. The Court finds that defendant does not satisfy this
25 requirement. The offense that led to defendant's current term of imprisonment is extremely
26 serious. Defendant, armed with a loaded stolen firearm, attempted to purchase $100,000 worth
27 of cocaine. Dkt. # 39 at 6. Potential violence could have resulted from this armed drug deal, and
28 this was not the first time that defendant was convicted due to drug trafficking with a loaded

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 8

gun. PSR ¶ 18. Moreover, defendant has a history of fleeing from law enforcement. PSR ¶ 20–21. That said, since his incarceration, defendant has not received any disciplinary infractions, and he has engaged in some education courses. Dkts. # 133-5 at 2, # 133-6 at 2–3. The Court is sympathetic to defendant's desire to support his daughter during the upcoming birth of defendant's grandchild. The conduct for which defendant is currently imprisoned, however, occurred less than two years ago, and the Court remains concerned that if released, he will present a danger to the community. U.S.S.G. § 1B1.13.[5] Defendant's motion for compassionate release must therefore be DENIED.

### V.   CONCLUSION

For all the foregoing reasons, defendant's motion for compassionate release (Dkt. # 133) is DENIED. Defendant's motions to seal (Dkts. # 136, # 150), and the government's motion to file an overlength response (Dkt. # 143) are GRANTED.

IT IS SO ORDERED.

DATED this 25th day of February, 2021.

*MWT S Lasnik*
Robert S. Lasnik
United States District Judge

---

[5] Because the Court has determined that defendant failed to show that "extraordinary and compelling" circumstances warrant relief, and the Court finds that defendant poses a danger to the community, the Court need not further address the factors set forth in 18 U.S.C. § 3553(a).

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 9